| 14 517 |
| 73a 645 |

PADDLEFORD vs. DUNN.

1. The act to quiet vexatious land litigation of February 2, 1847, operates prospectively only.

Paddleford vs. Dunn.

## APPEAL from St. Louis Circuit Court.

### STATEMENT OF THE CASE.

On March 6, 1849, Dunn filed his deed in ejectment, against the plaintiff in error, in the St. Louis circuit court, to recover possession of the north subdivision of fractional block No. 94, containing four and thirteen hundredth acres, according to Deward's survey of the St. Louis common.

The plaintiff offered, in evidence, to maintain his right to the possession—

1st. The record and proceedings before the United States Recorder of land titles.

2nd. Copy of Mackay's survey of said common.

3d. Copy of United States survey of said common.

4th. A deed from the city of St. Louis to plaintiff, dated 14th September, 1843.

A witness for plaintiff testified, that demand for possession was served for the plaintiff upon the defendant below, on 1st March, 1849, and that the plaintiff in evidence then claimed the property by right of possession for twenty years, by herself and one Micheau under whom he claimed.

It was also proved that said lot was sold by the city in 1836 to one Craft, and was by him forfeited for non-payment of rent, and was claimed by the city, and said lot was within the exterior limits of the common as described in the surveys above mentioned, and that the deed from the city to Dunn was executed by the officers by whom it purported to be signed. One of the plaintiff's witnesses also testified to the actual possession of said lot by defendant below, prior to March 1849.

The plaintiff also read in evidence the acts of Congress of 13 June 1812, act, 26 May 1824; act, 27 June 1831: Also acts of General Assembly of Mo., 18 March 1835 and 18 Jan. 1837.

The defendant then gave in evidence the deed of the city to Horace Wilcox, dated March 11, 1836, recorded 15 January, 1838.

Evidence was also given tending to show that Micheau entered on the lot adjoining the one in dispute, on the south, in 1825 or 6, and continued for many years to reside thereon, and while so residing thereon, enclosed about one half of the lot in controversy, and continued in possession of it until Wilcox took possession under the deed in 1836, when he (Wilcox) extended the inclosure so as to include the whole lot in controversy. Wilcox died in 1837 or 8, and on his death the defendant, Paddleford, came into possession of the lot in dispute, and has ever since remained in possession. Defendant, (P.) also gave evidence tending to show that neither the city of St. Louis nor the plaintiff had ever been in possession of the premises in controversy, or any part thereof within ten years next before the commencement of this suit.

The plaintiff then gave in evidence a joint resolution of the city council of St. Louis, approved February 6, 1841, read by agreement from the printed edition of the ordinances;) Also evidence tending to prove that the collector of the city of St. Louis had made repeated demands on Wilcox for the annual rents, but had been refused, and that no rent had been paid by Wilcox under that deed, and this demand and refusal to pay was reported to the city council.

It is agreed that the preliminary steps taken by the city prior to said two deeds to plaintiff and defendant, were correct, excepting all the action of the city concerning the alleged forfeiture or defeat of Wilcox's title, all of which questions are left open.

The court, at the request of the plaintiff below, gave the jury this instruction:

"If the jury find the premises in dispute to lie within the bounds of the St. Louis common, as confirmed by the acts of 1812 and 1831, and that the deed given in evidence by the plaintiff from the city of St. Louis to him was executed and delivered bona fide for the conside-

Paddleford vs. Dunn.

ration and in the manner therein expressed, then the title granted by said acts to said premises enures to the plaintiff."

To which the defendant excepted at the time.

"The court also gave instructions for the defendant, to the effect that if the defendant was in possession under Micheau and the possession of Micheau and himself had continued for even twenty years prior to the commencement of this suit, undisputed and adverse, then the jury would find for defendant; also, as to what constituted adverse possession, to which no exception was taken."

The defendant below also asked, but the court refused, the following instructions:

1. "If the city of St. Louis by deed dated the 11th day of March, 1836, conveyed the premises in question to Horace Wilcox, as set forth in the deed from said city to said Wilcox, as given in evidence by the defendant, the jury will find for the defendant.

2. "The joint resolution of the city council of St. Louis, as read in evidence by the plaintiff, approved February 6, 1841, were inoperative to divert the title of Wilcox as acquired by the deed to him from the city of St. Louis, dated March 11, 1836; and if the last named deed was a genuine conveyance, the jury will find for the defendant.

3. "Unless the plaintiff, his grantor, predecessor, or ancestor, or other person under whom he claims, was seized or possessed of the premises in question within ten years before the commencement of this suit, the jury will find for the defendant." Excepted to at the time.

The jury found for the plaintiff. The usual motion for a new trial was subsequently filed and overruled, and exceptions taken, and the case comes to this court by appeal.

## CROCKETT & KASSON, for appellant.

The plaintiff was barred by the statute of limitation of 1847 approved February 2d, and which took effect from its passage. It is entitled, "An act to quiet vexatious land litigations;" and declares (sec. 1) "no action at law or suit in equity, for the recovery of any lands, tenements or hereditaments, or for the recovery of the possession thereof, shall be commenced, had, or maintained by any person, whether citizen, denizen, or alien, resident or non-resident of this State, unless it appear that the plaintiff, his ancestor, predecessor, grantor, or other person under whom he claims, was seized or possessed of the premises in question, within ten years before the commencement of such action or suit."

The case here shows that the plaintiff, and those under whom he claims, had not been in possession for more than ten years before the time of bringing suit. The defendant asked an instruction precisely within the terms of the statute above recited, and the court refused it. This is here assigned for error.

This suit was commenced March 6, 1849, more than two years after the act took effect, and is, therefore, plainly within its provisions. It does not apply to suits commenced before its passage, but does apply to all suits commenced after.

The term of the law being expressly applicable to this suit, and the instructions asked and refused being strictly within its provisions, the refusal to give it can only be supported on the ground, that—

1st. The law in contrary to the constitution of the U. S., which declares that no State shall "pass any * * * *ex post facto law*, nor law impairing the obligation of contracts," Art. 1 § 10: or, that—

2nd. The law in contrary to the constitution of Missouri, which declares "no *ex-post facto* law, nor law impairing the obligation of contracts; or retrospective in its operation, can be passed." Art. VIII, § 17.

The first ground is involved in the second, inasmuch as the State Constitution has adopted the exact prohibitions of the United States Constitution, and it will not be contended that they are there used in any different sense. Let us examine these express prohibitions in their order:

Paddleford vs. Dunn.

1st. An "ex-post facto law." This applies solely to punishments of past acts, not punishable at the time they were committed, to crimes, pains and penalties. This has been solemnly and repeatedly decided.

Calder vs. Bull, 3 Dall R., 386 (1 Cond. § 1;) Fletcher vs. Peck, 6 Cranch 87 (2 Cond. 308;) Beny's case, 3 Gratt. 632; Bennett vs. Boggs, 1 Bald. C. C. R., 74; Watson vs. Mercer, 8 Pet. 88.

2nd. It will hardly be pretended that this is a law impairing the obligation of contracts. No contract is in the case, and none, is touched by the law. Crawford vs. Bank of Mobile, 7 How. U. S. R., 279. Even divesting down (incepted) before the death of the intestate, was held valid.

Lawrence vs. Miller, 1 Sandf. Sup. C. R., (N. Y.,) 516; Jackson vs. Lamphire, 3 Pet. 280.

3rd. Is the law in question "retrospective in its operation," within the meaning of the constitution?

We answer, no! It is expressly prospective in its action, applying to future actions, and not to past suits. Its "operation" is on the remedy alone, and that operation is prospective entirely. Newton vs. Tibbats, 2 Eng., (Ark. 95,) 150; Samfeyreae & Stewart vs. U. S., 7 Pet. 239; McCluney vs. Silliman, 3 Pet. 278, (especially last clause;) Davis vs. Ballon, 1 J. J. Marshall (Ky.) 573 and following.

The title shows the purpose of the statute to be, to touch all those cases of speculative rights, and dubious claims, upon which a plaintiff sleeps for ten years, and works only to vex honest occupants and improvers of the land. And the party here continued his sleep two years after the statute was passed. In Samfeyreae's case (7 Pet. 239) the court say, speaking of laws effecting remedies: "It has been repeatedly decided in this court, that the retrospective operation of such a law forms no objection to it. Almost every law. providing a new remedy, affects and operates upon causes of action existing at the time the law is passed." C. J. Gibson says they have always been sustained where they touched remedies only.

Bolton vs. Jones, 5 Raw., (Penn.) 149; Hinkle vs. Reffut, 6 Raw. (Penn.) 196

In Lawrence vs. Miller (above cited) the court says:

"Almost every law providing a remedy operates upon causes of action existing at the time the law is passed. Laws affecting the remedies have never been held within the inhibitions of the constitution, although they may affect the destruction of the right."

In McClung vs. Silliman (3 Pet.) S. C. of the U. S. say: that statutes of limitations are looked upon more favorably than formerly. "They rest upon sound policy, and tend to the peace and welfare of society, &c."

If the legislature has a right to extend, it has also the right to restrict; if it may give the right of appeal, it may take away the right of appeal; if it may burden the action of ejectment with a counter claim for improvemedts, it may deny the remedy to a long negligent claimant altogether, who has had already his right of remedy, and has refused to avail himself of it until the legislature has annulled it. Not the legislature, but he, himself has lost him the remedy.

This law is no more retrospective than a law changing the rule of evidence, which should admit a party as a witness, and thereby enable him to prove a debt against an unwilling and wicked debtor, which he otherwise could not have recovered. Both would act upon already existing facts. So, the granting of a statutory writ of review, &c. This law surely requires a new item of evidence.

Laws have been passed requiring claimants to prove their claims within a limited time, or they shall be bound; and these operate on claims already existing, but they are certainly constitutional, though they either shorten or prolong the time within which they shall find effectual remedies for their claim.

The object of our constitutional limitation on the legislatures was not to prohibit them from passing laws touching a pre-existing condition of things, by the remote and incidental effect of their operation; but to prevent them from aiming their laws directly at the abso-

Paddleford *vs.* Dunn.

lute rights, already settled in pursuance ot the laws previously existing at the time of their settlement. Clark vs. McCreary, 12 S. and M. (Miss.) 347.

It could not have been intended to forbid legislators to assign remedies and process of law, according to the overcharging demands and necessities of the community, in such way as their discretion should direct.

A law imposing a greatly increased rate of taxation, and authorizing for the first time the sale of lands to pay taxes, or empowering railroads to run through private lands, or a sale to pay the debts of deceased persons, or charging them with the value of improvements, would be incidentally retrospective, affecting the value of lands previously purchased, and endangering pre-existing titles, divesting them by a new mode. But if the law was to be applied in the future, and not thrown back upon the party; it would not be obnoxious to the constitution. So with all laws incidentally touching pre-existing reltaions, but applied only in the future.

Of this kind is the law in question.

The legislature might have saved from the future operation of the law for one year, or ten years, all claims. whether vexatious or honest. But they did not do so; and the court is now asked to interpolate the alleged omission of the Legislature.

This might well seem to be judicial legislation. There is no right of property divested; but a claim is set up against one who himself claims record title, and also the first, great, natural title of occupation. And the legislature declares that the courts shall presume that one who has neglected his claim for ten years, merely pretends to a claim, but that, in fact, his negligence shall be conclusive evidence that he has not a good title.

Is this law to be regarded, then, as divesting just rights of property? Is the presumption to be in favor of the negligent party, and against the diligent? Is the presumption to be against the law, and not for it?

The law acts upon claims set up after its passage, and not before. It acts on the future and not on the past. It is not retrospective within the meaning of the constitution. The legislature had the power; and the discretion exercised in their use of it cannot be controverted in the forum. The *locus in quo* for that discussion is the capitol.

## POLK, for appellee.

I. The statute of limitation of 2nd February, 1847 (see acts of legislature of '46 and '47, p. 94) except after ten years after its passage. For if this act is made to bar a recovery in this case, then it is retrospective in its operation, which is expressly prohibited by the constitution of the State. See constitution, Art. 13 sec. 17. Weber vs. Manning, 4 Mo. 230; Hall vs. Minor, 2 Root, 223; Holyoke vs, Hawkins, 5 Pick., 20; Penns vs. Ingram, 5 Wash. Cir. Ct. 90.

II. The record shows that the plaintiff had a right in the land in controversy. The land was in the St. Louis common—the title to the common had been duly vested in the city of St. Louis, and the city had duly conveyed to plaintiff. See the record and the statement of the case. The plaintiff's rights, therefore, cannot be taken away from him by this act of 1847. Clark vs. McCrary, 12 Smedes and Marshall, 347.

III. That the act of 1847, is retrospective upon the right of the plaintiff in this case, is evident from inspection of the record. For the adverse possession upon which defendant relied, commenced in 1836, and the act was passed on 2nd February, 1847. So that there had already been an adverse possession by defendant, against plaintiff of eleven years at the very time the act passed. Therefore, though the plaintiff, on his title, could have recovered against the defendant on the day the act was passed, and even until the year 1856—twenty years after the commencement of the adverse possession, yet, if the construction contended for by defendant be correct, after the passage of the act, he could not recover. However, therofore it may be said that the act operates upon the remedy, yet, it is clear that in this case remedy is right.

Paddleford vs. Dunn.

Birch, J., delivered the opinion of the court.

Respecting the point which is alone here pressed to a decision, we are of opinion that the first section of the "act to quiet vexatious land litigations," approved February 2, 1847, cannot be applied to a case like the present without a violation of that provision of the State Constitution which, in additional prohibition against "ex-post facto laws" and "laws impairing the obligation of contracts," inhibits the legislature from passing any law "retrospective in its operation."

It may be added, on the contrary, though perhaps, without such entire concurrence as to denote the probable settlement of the question upon that basis, should a proper case occur for an assertion of the principle, that as the plaintiff acquired such title as he finally stood upon in this suit, during the existence of a law which allowed him to assert it against the party in possession at any time within twenty years, that law should be holden not only to limit his right to sue for and recover the property, but thereby negatively protect, also, (in the virtual inhibition alluded to, either to extend or abridge the plaintiff's right) such maturing or accruing rights as might, render the original law alluded to, be relied upon in opposition to it. In other words, the limitation law, either in reference to the commencement of an action of this nature, as to an adverse title maturing and at length resulting from adverse possession, can neither be abridged or extended by the legislature, but can usually be none other than the one under which the right involved, incepted and must of course mature.

The judgment of the circuit court is accordingly affirmed.

Napton, J.—

I concur in the opinion that the recent statute does not apply to the facts of this case. If it had been designed to reach such a case, it would be restrospective legislation. Twelve years adverse possession had run at the passage of this act, and the day before its passage, the plaintaiff's title was good and could have been asserted in any judicial tribunal having cognizance of such questions. The day after the passage of the act, his title was worthless, if we give the act the construction contended for. In such a case, remedy and right are synonymous inasmuch as the old remedy is taken away, and the new one offered is unavailable. I give no opinion in relation to the proper construction of the act, except so far as this point is concerned.

---

RYLAND, J:—

I am of the opinion that the recent statute, "to quiet vexatious land letigation," does not apply to this case.